This morning is 418-0219. People v. Brandt. For the appellant is David Robinson. For the appellee is Jessica Hathaway. Okay? Mr. Robinson, you're the appellant. You may proceed. Thank you, Justice. May it please the Court? The ultimate question in this case is really quite simple. The State is aware of the mountain it has to climb in a State's appeal such as this. Trial courts' decisions are entitled to great deference, even in a case that involves questions of law. There's no question about that. And I think the State's brief outlines the standard of review in depth. And as to those factual questions, they're reviewed for manifest weight. And the ultimate decision with regard to questions of law is, of course, reviewed de novo. But the question here really is, was Master Sergeant Gordon's decision to park where she parked in the cutout next to the defendant's home off of the drive reasonable, given the totality of the circumstances, whereupon exiting her squad car, she immediately smelled cannabis? Now, as to the factual questions involved in that overarching ultimate question, as I framed it, I don't believe there's a dispute. So we're not asking this Court to determine that any of the findings made by the Court amounted to an abuse of discretion or were manifestly erroneous. The question again is, as this Court laid out in Woodrum, was this decision, as I just outlined it, reasonable police action? The State submits that it was reviews questions of law as applied to facts under the Fourth Amendment. The question is, what was reasonable under the totality of circumstances? I think I've been before this Court on a number of occasions wherein we've discussed Fourth Amendment questions. And I'm not one to say that the touchstone of the Fourth Amendment is reasonableness. Reasonableness, reasonableness, reasonableness. And the question that this Court, I think, has to ask is, how do you get to the answer as to whether this is reasonable? And that analysis is at the corner of the totality of circumstances. So what were the totality of circumstances here? As outlined in the State's brief, the police receive an anonymous tip. The State will concede for purposes of argument that this anonymous tip was not an anonymous tip that would give rise to probable cause, let alone reasonable suspicion, given, at least from my perspective in reviewing this case, the scaleness of the tip in conjunction with the lack of specificity and the lack of record in this case. So the question then becomes, well, why did the police go to the defendant's residence? The answer to that question is simple. Because they testified to their rationale for going to the residence. And I believe the trial judge accepted their reasons for doing so. And that was to conduct a knock and talk. And on page 83 of the record from the hearing on the motion in limine, Detective Ringhausen testified that the reason they would conduct a knock and talk in a situation like this is that it was protocol to corroborate that anonymous tip. So they're there for the purpose of corroborating the anonymous tip. Can we reach a point, counsel, where the number of police officers in separate vehicles becomes a point where the reasonableness of their action can be questioned? I suppose you could, Justice DeArmond. But I don't believe we've gotten any place near that in this case. Again, the Fourth Amendment question is one of reasonableness in totality of the circumstances. Now, clearly the record reflects in this case that this individual at this home had been the subject of anonymous tips and investigation in the past. It is not a stretch to believe. Yes, Your Honor. Yes, Your Honor. Yes. Yes. And again, from my perspective, I think that goes to the probable cause or reasonable suspicion question. My point here is it is not a stretch for trained officers, so there's three officers, to not want to approach someone who's been accused of possessing or distributing drugs from their home alone. And there is great value, not only to society and the safety of the officers, but frankly to the safety of this individual. And that's borne out in this case in particular, where they arrived and Detective Ringhausen specifically testified, and I think the record reflects that the court accepted, that he approached, modestly and casually represented to the defendant his badge and said, we're here, gave him an opportunity to remove his daughter, young daughter, from the driveway, I believe across the street to the grandparents' house. Again, one of the benchmarks throughout this case that you will see is that each step taken by the police was reasonable. This is not a case that you sometimes see on CNN, where 6, 8, 12 members of law enforcement approach the door, bang on the door, and demand answers based on a knock and talk. Detective Ringhausen testified that he pulled up in front, did not pull into the driveway, which frankly I think was probably a good decision in light of Collins that followed this case. So he didn't pull his squad car into the driveway, pulled up out front, modestly approached the defendant, informed him about why they were there. Now, this leads, I think, to a critical point and demonstrates in part why Judge Pissorius in this case ultimately got to the wrong legal conclusion based on the facts. When Inspector Ringhausen approaches the defendant, he has a discussion about who he is, goes across the street, drops his young daughter off, I believe as I said at the grandparents' house, comes back, they engage in a conversation. During this time, the Master Sergeant Gordon pulls up in the cutout next to the house, next to the window. And that, I believe, is represented in Exhibit 1 in the record. Immediately, quote unquote, from the record, immediately upon exiting the squad car, she smells the cannabis. Now, there's some argument from the defense in their appellee brief about whether Judge Pissorius ultimately believed the representations made by Ringhausen and Gordon. Based on the way the trial judge entered its written order, when I first got this case, I got the same impression somewhat from reading it. Upon further review and reading it in depth and reviewing the order from the judge indicating its findings as to the co-defendant paramour of defendant based on these same facts, it's very clear. And in fact, I think highlighted on page 18 or 19 of the state's brief, we point out specifically that Judge Pissorius found the inspector and the Master Sergeant credible in their testimony to the court. And in fact, that is in part why Judge Pissorius ultimately found that based on Jardine's, that the ability to detect cannabis and that training was akin, the court's words, not the state's, akin to a drug test. A drug dog. A drug detecting device. Well, of course, this court is well aware that cases like Redman and Wright alone from this court indicate that the five senses that a police officer uses in evaluating a situation are not akin to a specialized device. As we point out in our brief, to hold otherwise would be to totally eviscerate decades and decades of knock and talk jurisprudence. And a close reading of Jardine's, Burns, Bonilla, and Collins, frankly, demonstrate that that is not the court's intent when they're talking about an evaluation of the trespass rules in curtilage. Now, I do want to address Jardine's, Burns, Bonilla, these cases because I think, again, for anyone who's ever done any trial work, one of the pitfalls of trial work that we don't experience as much on appeal is the limited time in which you have to deal with issues wherein you fall into a rabbit hole. And words or phrases like curtilage come up. There's a relatively new case from the United States Supreme Court that deals with curtilage. There's relatively new cases from the Illinois Supreme Court case that deal with curtilage. And so you have an inclination as a practitioner or as a trial judge, I think, to start analyzing it based on that when it's not applicable to the case at bar. Here's what Jardine's, Burns, and Bonilla say about curtilage. Police are not permitted on the curtilage because, quote, there is no customary invitation, unquote, for police to introduce trained drug dogs to explore the area in hopes of discovering incriminating evidence. That's from Bonilla. So that's the most recent Illinois Supreme Court precedent with respect to Burns and Jardines. Well, what does that mean? That means that those cases are focused on trained drug dogs or, as Justice Scalia pointed out in Jardines, metal detectors or bloodhounds. Other things that would, frankly, to paraphrase Justice Scalia, require you to call the police if someone were doing that in your yard. No. Instead, although the presumption is that when the police are on the curtilage, it's a trespass, that is not the end of the discussion. That is merely a rebuttable presumption. Why do I say that? Because, as the court points out, beyond the Girl Scouts, which is sort of a clever line and I think I appreciate from the case, more importantly, what about the guy from the electric company? What about the mailman? To say that the police, that Detective Gordon could not park her vehicle in that cutout next to the house immediately off the road and step out and immediately smell cannabis would be to say that the mailman can't pull into that cutout if his daughter's in the driveway with him. Were there any photographs presented at trial as part of the record which show where this cutout was in the driveway leading up to the house? Yes, Your Honor. And, Justice Dimon, if I could, we discussed this, both the opposing counsel and I discussed this beforehand. We were somewhat dissatisfied with the way the photos came out for purposes of the record. And if I could approach, I would be happy to show it to you. This was exhibit, People's Exhibit 1, that demonstrates the cutout and that's the color photo of the exhibit that's otherwise in the record. To my point... So this was, you discussed this as disagreeable that this court may consider this? Thank you, counsel. Go ahead. As Your Honor can see from the photograph, the fan that was affixed to the window near that cutout is where Master Sergeant Gordon testified the odor of that cannabis, from which that odor of cannabis... Is the window the one, this window here that you were talking about? Yes, Your Honor, and I believe that's demonstrated in People's Exhibit 4. It may be... So it would be more clear, it's the window next to the electric boxes or whatever those things are? That's correct, Your Honor. And again, this goes to my point. For this court to say that Master Sergeant Gordon couldn't park her squad car there, given the totality of circumstances, and again, just as an aside, simply because there's someplace else to park, doesn't make where she did park unreasonable for purposes of the Fourth Amendment. The State made a point, however, of noting that really once the other two vehicles were parked, that was about the only other place that was left open that wouldn't be blocking the roadway. It is, Your Honor, and I believe that's a question that I think should be resolved at the trial level, and I can't represent that. I have not been to the scene. I don't know that. That's what was represented by the State below. And I think that goes to the question of what was reasonable. Could she have parked a quarter of a mile down the road, off the side of the road? Sure, but just because she could have parked there doesn't mean that where she did park was unreasonable. It's the same place that the CWLP could park. It's the same place that Ameren Gas could park. It's the same place that the mailman could park. Again, this is not to say, though, that unlike the mailman, once a police officer steps foot onto that curtilage, that the Fourth Amendment's not implicated or that there's not a presumption. But it certainly, as Jardines, Burns, and Bonilla point out, and even Collins, it becomes a rebuttable presumption at that point. And all you have to show, as this court pointed out in Woodrum, is that where the person parked was reasonable under the totality of circumstances. Now, the question in that regard is, is there a customary invitation? And that's the phrase that this court has used in Woodrum, and it's a phrase that the Supreme Court has used in Jardines, I believe in Burns, Collins, Bonilla, to park in the location where law enforcement parked. Now, one might ask the question, which I did in trying to analyze this legal issue for myself, well, is there a situation in which a law enforcement officer would be on the curtilage where there would be no presumption of trespass or implication of the Fourth Amendment? And I think I answered that question for myself, no, with a really important caveat, that police end up on the curtilage of people's homes every day. And it's absolutely reasonable. They run through the backyards of people's houses in hot pursuit. They engage in vehicle accidents that they may or may not have caused and end up on someone's property. If they're there for a legitimate law enforcement purpose, that presumption of being on the curtilage is one of a rebuttable presumption. Now, this court may be asking itself, my time's limited, so I just want to make sure that I'm clear about this. Would I like to challenge whether this was curtilage at all? Sure. But the court made a determination that this was curtilage. Is that a factual or legal determination? It is a legal determination based on the application of facts. And I don't believe that I can genuinely represent to this court that based on the record that we have, because, Justice Steigman, it doesn't matter. It does not matter. This court could hold that this cutout was curtilage and it wouldn't matter because it's merely a rebuttable presumption. They were in a place where they were entitled to be. And for those reasons, we would ask that this court reverse the trial court's determination. Thank you, Mr. Robinson. He's up. If this was my house and it was a driveway, instead of a gravel cutout, and a police officer wanted to do this knock and talk, could he pull into my driveway? I know this one's a little different because we've got somebody outside, a daughter. But can an officer pull into my driveway? Can he pull into my driveway and inquire about burglaries two doors away? Because I live on a long street and there are a whole series of burglaries. To answer your question, I think it's helpful to point out one key distinction, one critical distinction that I'm not sure came out during Mr. Robinson's argument. And that is that cases like Jardine's, Bonita, that line of cases involving drug dogs and front doors, one difficulty with this case is that this doesn't involve a front door and it doesn't involve a drug dog. And those cases indicate that front doors are the most public of these private spaces all around the house that are considered privilege. So as I was driving here today, I was trying to think about why this is not an easy case. Because it's not. It's a little bit difficult. The reason it's not an easy case is because if this was a front door and this was an officer walking to the front door, that would of course be fine. As Mr. Robinson argued, to hold otherwise would eviscerate the whole idea of knocking top. What if you have to walk up the driveway to get to the front door? That's a different question and I'm not quite sure. That's the question that we want an answer to. And so I guess I'm almost there. Collins involved a driveway. Collins is a 2018 United States Supreme Court case, holding that that is absolutely privilege. Now, here we don't have a front door and this doesn't involve an officer walking through a driveway either. We have a critical fact that the property owner, the homeowner, is actually just standing in his yard, which is unusual. Normally that doesn't happen. And so the idea of a knock and top is inapplicable. The officer is going to have to go as far as to interfere. That's not quite accurate. The knock and talk may not have the knock aspect, but the question I want to ask, what justification did the police need to justify a knock and talk in the first place? There seems to be some suggestion here that they don't need much, but they need something. Correct. No, it isn't. Actually, that's my whole point. They need nothing at all. Right. They're in the same place as any other citizen walking up to someone in their yard. Do they need any kind of showing of suspicion? No. Other than just being a nosy cop to walk up to someone? And that's why here where they were lacking in probable cause. Well, so if they wish to talk to an occupant of a house and they drive there, if he's outside, then they can talk to him outside, but they don't know that until they get to the scene. So if he's outside, where are they supposed to park? Well, to answer your question, I think we need to go back to the fact findings of the court on that exact issue. Where would a reasonable police officer park in this situation? And I disagree with Mr. Robinson on that point as far as what the court made credibility findings about and what he did not. The state, in its brief disappearance reply on page 2, stated alongside the house, quote, was the most appropriate place to park under the totality of the circumstances. And I'm not sure where that's coming from. Were the other two police cars present first before the car in question was parked? Mr. Robinson may be able to clear that question up on his rebuttal. I believe they were. They were. So they were all coming in at the same time. So Sergeant Gordon parked her car after the other two. After the other officers. In a fashion so as not to be blocked or block the others. Isn't that correct? She testified that the way Mr. Brandt was standing prevented her from pulling into his driveway. So he was, if I can hold this. Okay. My understanding is he was standing somewhere in this area and that she intended to pull in here, but instead pulled up directly over in this area behind the house. I do want to direct the court. What was unreasonable about that? I was looking at this picture. Why should this cutout be viewed? Well, first of all, I guess the trial court said this is curvilege. Is that a legal or factual determination? I would agree it's a mixed question of law and fact. Well, the trial court makes findings as to what the records show, but isn't the determination whether it's curvilege or legal? Yes. Two points to that, Judge. On the legal determination, it absolutely is. Front porch, side yard, back yard. Police officers are not allowed. If they knock at the front door, and this is from Merdeems, knock at the front door. It's a reasonable expectation that a visitor will wait for a period of time. If someone doesn't answer, unless invited in, they leave. They're not allowed to go to the side yard. They're not allowed to go to the back yard. We haven't got there yet. Without an exigency. Yes, sir. We haven't got there yet. It's taking us beyond where we even have to go. The question here is, as they pulled up, was there anything unreasonable about Sergeant Gordon pulling her car into an area which apparently the property owner has prepared in such a way that it's just as consistent. The makeup of that area is just like the rest of the road and the driveway. So, obviously, somebody's made a decision that we want to make this a place to park. It's not just grass. It's continued to gravel all the way down that section. So, isn't that an invitation to park there? So, getting past the question of these pergolas, I think next is where you get to a fact that is entitled to extraordinary deference. Which fact is that? The fact is that, if you look on the third page of these court's order, that would be the record at 133, the court found when they arrived at, I'm sorry, when they arrived, the defendant was home, with photographs presented into evidence showing multiple places to park, Sergeant Gordon, quote, inadvertently parked the driver's side of her vehicle next to an open window. In the court's view, this constitutes an intrusion into the curtilage of the defendant's home. Well, you know, when we talk about findings of bad deference there, the scare quotes around inadvertently suggest the court doubted this. And I'm wondering, what's the basis of that? I'm looking here at this photograph, and it's as if Sergeant Gordon, she must have known somehow she pulls up, there would be a fan in the window blowing out that would reveal the smell to an experienced officer of cannabis. Now, just pausing right there, where in the world would that conclusion come from? Why in the court's experience, or the police, or yours, could you suggest to us that by pulling up at this spot, and there's no support in the record that she's ever been there before, is there? No. Okay. Pulling up at this spot, she'd expect there'd be a fan in this window blowing out the odor of cannabis. Is there any basis to support this? Judge, I would say it's not uncommon, as this court knows, for officers to detect the odor of cannabis from doors. No, that's not my question, counsel. But she's parking, as the court found, with her driver's side door directly adjacent to an open window, which she can see from her car. So if she parked maybe four inches back, she's okay? Well, I want to go back to what is the inadvertently? Is that suggesting that she knew there was a fan in the window that was going to be blowing out the odor of cannabis that she could detect only if she got that close? But if, just as Jarvin says, she backed four feet, then maybe she wouldn't be able to? Is that what that inadvertently means? Let me talk about my reading of this. Oh, no. As far as what? I want you to answer my question about inadvertently, because this is one of those things. As we review findings of fact, we have to be deferential and find, is it contrary to the manifest way of the evidence? It seems to me there's no evidence to support this conclusion. Is there? Yes. And if there is, this is your chance to tell me what it is. Yes. Reading the findings, the court only made credibility findings on the smell issue. If you read this paragraph, and I won't read the entire thing, much time has been spent by counsel, as well as counsel for the co-defendant in the previous hearing, arguing the impossibility of the officers detecting the odor of cannabis. The court found the testimony of the officers to be based on significant experience in the area of identifying cannabis, incredible in their presentation to the court, period. This, however, does not end the discussion. And this is where the court goes into this issue of curtilage. From there, the court goes into this discussion about why in the world these officers would be, it's a the lady doth protest too much idea, I believe, where why are they volunteering that this is accidental and this is inadvertent? Well, how about, this is a thought. She had no idea there was going to be a fan in the window blowing stuff out. And to the extent the defense was arguing, you did that intentionally so you can get up to the window, she says, no, that was inadvertent. Wouldn't that be at least as reasonable as the alternative? And I'm still waiting to hear what's the alternative. To support the claim that this was somehow a devious scheme on her part to violate the curtilage rules so she could get close to this source of incriminating evidence. Who knew it was there? As Ms. Robinson argued, it all goes back to reasonableness. The court found, this is a specific factual finding, that there were many other areas where she could park. And this is akin to... What does that matter? It matters because the area around a window that close to the window, and again, I can't tell you exactly how many feet or how many inches would be an intrusion under the Fourth Amendment. The court found this was an intrusion based on where it was, and that came from the testimony and that came from the photos. And the inadvertently, in quotes, parking there. And from there, I think the court was also thinking, okay, I believe this is a questionable decision on her part. Why? Why should we respect the court's decision? Increasing the chances that she might... Why should we respect the court's decision on the scare quotes? What is there about what Sergeant Woodward did that is in any way suggesting that this is somehow a devious step to get close to the source of this incriminating evidence that she knew was questionable? She doesn't have to have that specific intent. The court found that this was a deliberate effort to intrude into what many courts have found to be a protected... Okay, let's go back to my first question. Yeah, I didn't get to finish answering that. Driveway. I'm out in front laying papers. Can a police officer pull into my driveway for a knock and talk? The answer has to be yes. Where is he... I live on a divided street, a boulevard. If you park in the street, it's very narrow for cars to get by. He pulls into my driveway. Am I to think that this is some... I'll accept that my driveway is part of the curtilage. Can he do that? And if he can't, I guess I'm going to have to tell him to not do that in the future. It all goes back to reasonableness. Is it reasonable for him to pull into my driveway? To what you described is how the layout is of your property. I think that would be reasonable. He can see into my basement window when he sees grow lights. He can see into my computer room and he can see grow lights. I'm stupid for leaving the blinds open. Was it reasonable for him, assuming that it was a knock and talk, based on something? Or maybe based on nothing. The earlier thing I said about other burglaries in the neighborhood. Maybe I've complained about a burglary of my garage. Somebody stole a bicycle. Can he pull into my driveway for a knock and talk to see if I have any information about people around my neighbors? So he's got a reason. Or the pretext of a reason, which I couldn't possibly know, maybe. And he sees something. If it's reasonable for him to park on the driveway, why is it unreasonable for Master Sergeant Gordon to park in a place where it looks like it's okay to park? Under the layout that you described, it sounds like there wouldn't be any other reasonable place to park. Well, you could park in the street. It just wouldn't be convenient for other drivers. I mean, they could get around it. I'm not talking about, you know, they're going to scrape. It's wide enough for a car to go by. But you have to be careful about opening your car door and that sort of thing. And joggers and bicyclists. Well, I think a better analogy, if I had to change the layout of your property a bit. My property involves a street where there's lots of parking. Numerous places one could park. Could be in front of a neighbor's house, which is fine. And a driveway where you can pull up a little bit in the driveway, but you can also pull up right next to a window, right next to my house. If a police officer, instead of just parking on the street, pulled all the way up next to my window, I would find that to be extremely odd. A greater intrusion. Yes. And it wasn't reasonable. And it wasn't necessary. It wasn't reasonable. And here we also have, I believe, a credibility finding, that the court believed her decision to park in that exact spot was intentional. Why should we give that a credit on this record? Why isn't that contrary to the manifesto? I think it's just as valid as the credibility finding, the equally kind of dubious credibility finding, honestly, that somehow she could smell cannabis that was sealed away three different ways. Well, we have some basis for it. She says, by training and experience, what's the basis for the inadvertently finding? And, by the way, I want to go back to Justice Lee Ervin's question. When you said there were other reasonable places to park, his question was, why does that matter? In other words, if where she parked is a permissible place to park, why does it matter that it might have been others? Well, going back to my example about my house. Yes. You said it would be odd, but does that make it impermissible? I would consider it to be an intrusion. I would wonder why the person was parking. Does that make it a violation of the Fourth Amendment? Yes. It's similar. To pull up the driveway. If having the option of parking in the street or pulling up partially in the driveway, if you picked an exact spot up on the driveway, So, if a police officer pulls up the driveway as far as it goes, in my house, for instance, right up in front of my garage, that's a violation of my current allegiance, whereas if it were 20 feet back towards the street, it wouldn't. Okay. Is that what the Supreme Court of the United States said? Is that what you're citing to us? An intrusion into a driveway where there are other permissible reasons. It all goes back to reasonableness. Would a reasonable person coming to my door for Girl Scout cookies? Say that again. I'm sorry. Would a mom and a little girl coming to my house for Girl Scout cookies pull up in front of my house, maybe pull up in my driveway a bit, or would they pull all the way up right next to my kitchen window and park in that exact place? Would a FedEx truck as recently as last week pull all the way up to my garage? Is that a violation? Should I have sued them? No, it's not a question of whether you would sue them. It's a question of would that make you feel just a little bit violated? Would it make you feel like that would not be? Is that the standard on whether something is curvilege or not? Well, let's go back to what police officers are allowed to do under Jardines. They're allowed to walk up to a front door. I know this involves parking, but the most public of places is this front door. Other areas around your house where you just don't need to be, where the public doesn't need to be. If I know my man who helps me with my front yard was lurking around the side of my house or in the backyard where he's never supposed to go, I'd be like, hey. I'd rein him in. I'd say, hey. There's areas around the house where police officers are just not allowed to go. If they knock on the front door, they can't go in the side yard. They can't go in the back yard. But the meter man and the Xfinity guy, they can go wherever they want because they have to find the meter or the wire to be repaired or whatever it is they're doing. But Justice, don't you agree that a meter man would first come to your front door and knock and let you know? No. No, they go around and read the meter with a device. They don't knock to anyone. Maybe where I live they do knock because people are more nervous about people walking around their houses. So that could be just different based on where you live. And so that's another just variable. And I'm going to be attentive. My mailman comes to the back door often because he wants to put the packages that he's delivering by the back door that we go in and out rather than the front door which is visible from the street. I'm happy he does it. Is that an implied invitation? I never told him to. You haven't told him not to? I don't know. That's a different situation. Thank you, Counsel. Your time is up. Oh, thank you, Judge. Mr. Robinson, any rebuttal, sir? Thank you. I'm going to say it briefly, but that's always fine. It should be today. Yes, go ahead. There are three questions I want to address for the Court very briefly. But before I get there, I want to address the question about the dubious finding that Counsel points out Which dubious finding is that? The one regarding the smell. Oh, okay. And I want to point this out because when I have an opportunity, I like to defend the integrity of police officers who testify under oath. I will point out that as to the co-defendant in this case, based on the exact same set of facts, the Court admitted this drug evidence on the specific finding, and I think the Court can take judicial notice of this. I'm just pointing this out for the record for the integrity of my officers, that that argument was made by the lawyers for that co-defendant, and that was rejected by the Court. So there's no question here. Well, this Court rejected it, too. Correct. The trial court. So the trial court already stood up to your officer. Correct. As to the three questions, I want to take them in order. Justice Knecht, the question about the driveway, can you, that was squarely addressed in Collins. What did the Court say in Collins? Justice Sotomayor, writing for the majority, said this is 1671, right at the beginning of the opinion. The Fourth Amendment interest in the item searched, i.e., the motorcycle, but also invaded Collins' Fourth Amendment interest in the curtilage of his home. The very next sentence says, the question before this Court, and this is why I pointed it out in the state's brief, is whether the automobile exception justifies the invasion of the curtilage. Right? The whole point there was that became an invasion of the curtilage because, for the reason they were. Counsel sort of nibbled at the edges of this, and I think she landed right on it, inadvertently. If the police are going there to peek in your window, that matters. If they're going there to exercise an automobile exception, that matters. When you pull up in a cutout on the side of the window with no knowledge of what's coming in or out of the home, or that window's even there before you get there, is part of the totality of circumstances, and errs on the side of it not being a protected area, or better put, an area where you're invited to be, just like the Girl Scouts. Of course the Girl Scouts come to the front door, but guess where they sometimes park before they pile out of the van? Next to your house in the cutout. They're invited to be there. And this is exactly what Jardines gets at. It's exactly what the court gets at in Burns and Bonilla, that if he doesn't want you parking in the cutout, guess what you have to post there? A no trespassing sign, because otherwise people will think you can park in the cutout designed for vehicles to park. Two, Justice Steigman, you asked a question about the most appropriate place to park. How do we get there? Who said that? Master Sergeant Gordon testified to that, page 86 to 88 of the record. Justice DeArmond, you followed up on the question about the, quote, unquote, scare quotes about inadvertently parking. When I first read the court's order, I sort of cringed, thinking, ooh, does he not buy that? The more I analyze this case, I'm not sure. I think what the court was actually pointing out there is not that the court didn't believe the officer, because ultimately he could have found it on that basis. He could have said they're not credible, I don't believe them, they came there for that purpose, it's a violation of the Fourth Amendment. He didn't. He said she got there, she parked where she parked, she got out, and she acted like a drug dog. Well, that's not the law. I believe, and I believe the court believed, that this was a police officer who's not a lawyer in a police report and under oath testifying and being inarticulate about how she got there. I believe she was actually testifying precisely, as Justice Steinman points out, that I inadvertently parked there. In other words, I didn't know that there was going to be the smell of cannabis when I pulled up. We were doing a knock and talk. For those reasons, we'd ask that you reverse the trial. Thank you, counsel. The court will take this now to the advisory committee.